James S. Jardine (1647)
Samuel C. Straight (7638)
Ryan B. Bell (9956)
RAY QUINNEY & NEBEKER, P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
    Telephone: (801) 532-1500

*Attorneys for Defendant e.Digital Corporation*

IN THE UNITED STATES DISTRICT COURT  FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DIGECOR, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>E.DIGITAL CORPORATION, a Delaware corporation; DOES 1 to 20, individuals;<br><br>Defendants. | MEMORANDUM IN OPPOSITION TO DIGECOR'S MOTION TO QUASH OR MODIFY SUBPOENAS<br><br><br>Civil Case No. 02:06-CV-00437<br><br>Judge Ted Stewart |

Defendant e.Digital Corporation submits this Memorandum in Opposition to digEcor's Motion to Quash or Modify Subpoenas.

**ARGUMENT**

digEcor's Motion to Quash or Modify the subpoenas issued by e.Digital seeks to impose strict new limits on the traditionally broad scope of discovery.  The boundaries of relevant evidence are set by Rule 26(b) of the Federal Rules of Civil Procedure.  Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial if the discovery

1

appears reasonably calculated to lead to the discovery of admissible evidence."  As digEcor admits in its supporting memorandum, the scope of relevant discovery is quite broad.  S*ee* Mem. Supp. Mot. to Quash, Docket # 169, p. 3.  Indeed, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).  Accordingly, e.Digital is permitted to conduct discovery of all issues within that scope.  e.Digital's subpoenas both to digEcor's suppliers and customers seek information within the permissible bounds of discovery, and so the recipients of both sets of subpoenas should be required to comply.

I. **E.DIGITAL'S SUBPOENAS TO THE DIGECOR SUPPLIERS SEEK INFORMATION THAT IS RELEVANT AND LIKELY TO LEAD TO ADMISSIBLE EVIDENCE**

e.Digital issued its subpoenas to digEcor's suppliers in support of its second, third and fourth counterclaims.  These claims allege that e.Digital transmitted confidential information to digEcor and its suppliers (namely, DeCuir, Inc. and Wolf Electronix) while the parties were considering working together to design the next-generation digEplayer, and that digEcor and its suppliers employed some or all of this information in developing and building their digEplayer XT.[1]  *See* Second Amended Counterclaim, Docket # 78, ¶¶ 18-24.  digEcor objects to the subpoenas claiming that e.Digital has not alleged sufficient facts to establish its right to discovery for these counterclaims.  Specifically, digEcor argues that e.Digital has not specified enough pieces of information that were transmitted, nor given a reason to believe that such information might have been incorporated into the digEplayer XT.  Neither argument is supportable.

---

[1] e.Digital also alleges that digEcor likely transferred such information to other suppliers such as Triad Engineering and VPI Engineering.

### A.   e.Digital Has Alleged Numerous Facts Suggesting that the Subpoenaed Parties Possess Relevant Information

e.Digital's pleadings and discovery responses allege that numerous documents and pieces of information were transferred to digEcor, Wolf Electronix, and DeCuir, Inc.  *See* Second Amended Counterclaim, ¶¶ 18-22.  These include Architecture/Block Diagrams (¶ 19(a)), schematics, bills of materials and related technical documentation (¶ 19(b)), photographs of the interior and exterior of the existing digEplayer, and costing and sourcing information, and fabrication drawings (¶ 22).

These allegations are buttressed by the lengthy response e.Digital made to a recent interrogatory from digEcor as well, which asked e.Digital to list the various documents and pieces of information it supplied to digEcor and its design partners during the early phase of the XT project.  In its response, e.Digital listed numerous pieces of sensitive, proprietary information it had shared, including a complete "Technical Data Package" shared with DeCuir, a "Manufacturing Package" which included detailed schematics, bills of materials, and assembly documents, sent to Wolf Electronix, and numerous documents and sets of data supplied directly to digEcor which would give insight into many aspects of the digEplayer's design and function.  A copy of the text of e.Digital's five-page response to Interrogatory No. 1 is attached hereto as Exhibit 1 (filed under seal).[2]

Moreover, as noted in the same interrogatory response, digEcor worked closely with its suppliers to develop the digEplayer XT, so it follows that any of the voluminous e.Digital information possessed by digEcor could easily have been shared with Wolf Electronix, DeCuir,

---

[2] e.Digital's interrogatory responses were duly verified by e.Digital's Robert Putnam, as required by the federal rules, giving them the same evidentiary standing as the declarations submitted in support of digEcor's motion.

Inc., Triad Engineering, or VPI Engineering.  A final basis is e.Digital's statement in its interrogatory response that Brent Wood had made representations in the past that digEcor was well-practiced at, and willing to reverse engineer technology, and could easily have requested that its suppliers reverse engineer e.Digital's proprietary technology for use within the XT.

digEcor offers no evidence or argument positing that it and its suppliers did not receive the information they are alleged to have received.  Given that e.Digital's allegations remain unchallenged, they provide sufficient basis on which discovery may conducted thereon.

### B.  e.Digital Has Alleged Sufficient Basis to Support its Allegations That its Confidential Information Was Included in digEcor's digEplayer XT Device

The combined facts that Wolf, DeCuir, and possibly Triad and VPI possessed highly confidential information pertaining to e.Digital's proprietary technology, and that those same parties simultaneously worked with digEcor to produce a device that was extremely similar to the one produced earlier by e.Digital, form a sufficient basis for the inference that the XT could have included technology originally developed by e.Digital.  In fact, given the extensive similarities between the XT (developed by the third-party suppliers), and the digEplayer 5500 (developed by e.Digital), this inference more than sufficient to support the subpoenas to the suppliers.

But beyond that, e.Digital has alleged specific facts supporting its belief that its information was in fact used in the development of the XT.  For example, e.Digital alleges that DeCuir representatives stated that the use of e.Digital's technology documentation "contained a lot of information we can use for the [XT] product spec[ification]."  Second Amended Complaint, ¶ 25(a).  DeCuir also stated that e.Digital's Block Diagrams "will be of great assistance in helping [DeCuir and digEcor] to baseline the current product."  *Id.,* ¶ 25(b).

Further, digEcor announced in a press release that its XT player was based on "the best features of the [digEplayer] 5500," all of which features were developed and designed by e.Digital. *Id.*, ¶ 25(c). e.Digital has made several similar allegations regarding the likelihood that digEcor relied upon e.Digital's confidential information in developing the XT player, in both its Second Amended Counterclaim and its Response to Interrogatory No. 1. *See* Second Amended Counterclaim, ¶¶ 25(d)-(e); Response to Interrogatory No. 1, p. 6.

Against all of these allegations, which were made without the benefit of extensive discovery, digEcor submits its own declarations intended to show that no confidential information was shared or relied upon by any of the suppliers or digEcor itself. This strategy is not appropriate. digEcor has submitted questionable evidence contradicting e.Digital's claims in order to prevent e.Digital from ever investigating those claims. e.Digital is not required to prove that the suppliers misused its confidential information in order to conduct discovery on that very issue. Rather, discovery is allowed for the purpose of investigating one's claims.[3] digEcor's declarations are subject to challenge, investigation, and cross-examination, and the only way for

---

[3] It is also not true that e.Digital has never sought similar discovery directly from digEcor, as digEcor claims. e.Digital's Second Set of Interrogatories and Requests for Production contained the following interrogatories:

Interrogatory No. 1: Identify each and every Communication you have had with any Person relating in any way to the Hardware, Hardware Design, User Interface Design, Industrial Design, Software or Firmware on the digEplayer XT.

Interrogatory No. 3: Identify each and every Communication you have had with any Person relating in any way to the Hardware, Hardware Design, User Interface Design, Industrial Design, Software or Firmware on the digEplayer 5500.

These interrogatories, and corresponding requests for production, should have produced all of the code, technical designs, etc. that changed hands between digEcor and any of its design partners. Further, discovery is ongoing, and e.Digital is entitled to direct further requests to digEcor on these topics. Finally, e.Digital knows what information it gave to digEcor. The more relevant question for e.Digital's purposes is what e.Digital information digEcor transmitted to its suppliers. This is the question sought to be answered by e.Digital's subpoenas.

e.Digital to carry out such tasks is to discover the facts at the heart of this dispute. Otherwise, any party could submit preemptive declarations contradicting the other party's claims in order to close off all discovery of such issues.[4]

Judge Warner of this Court recently considered a similar issue in the case of *Petersen v. Daimler Chrysler Corp.,* 2007 WL 2391151 (D. Utah). In that case, the defendant tire company moved the Court for an order limiting the scope of discovery to the tires that were similar to those involved in the accident at the heart of the case. The defendant argued that the plaintiff bore the burden of establishing that tires on which it sought discovery were similar to those involved in the accident. The Court disagreed, stating that such a burden might be proper at trial, but certainly not in the discovery phase of the case. *Id.* at *2. Writing that the defendant's argument confused the stricter issue of admissibility with the looser standard of discoverability, the Court denied the motion and held that the limited scope of discovery proposed in the defendant's motion "would be premature and could potentially deprive Plaintiffs of discovery supporting [their] theory." *Id.* at *3.

Similarly, digEcor proposes a pre-discovery burden upon e.Digital that is not found under the liberal rules of discovery. At present, E.Digital does not seek examination of witnesses at trial, nor even to survive summary judgment. Rather, e.Digital seeks the right to conduct basic discovery on issues that go to the heart of its counterclaims. In this context, it would not be appropriate to weigh digEcor's declarations against e.Digital's allegations to determine whether

---

[4] Regardless, digEcor's declarations are unreliable on the issues for which they are submitted, as each affirms facts not within the knowledge of the declarant. For example, in his declaration, Mr. Harkness claims in the same breath that the XT player was designed by someone other than his own company, but that he knows it is entirely different from the digEplayer 5500. *See* Harkness Decl., ¶ 6. Similarly, Mr. Hurst avers that no information provided by e.Digital was ever incorporated into the design of the digEplayer XT, even though he admits that the player was designed outside of his control, by third parties. *See* Hurst Decl. ¶¶ 4, 7.

discovery is permissible.  Because there is a reasonable likelihood that e.Digital's subpoenas will result in the discovery of admissible evidence, digEcor's motion should be denied.

II.   **E.DIGITAL'S SUBPOENAS TO DIGECOR'S CUSTOMERS SEEK RELEVANT INFORMATION REGARDING DIGECOR'S CLAIMS AS TO THE INTELLECTUAL PROPERTY WITHIN THE DIGEPLAYER.**

e.Digital issued subpoenas to several airline customers of digEcor's seeking information and documents related to the airlines' relationships to digEcor.  Four requests in these subpoenas seek specific information regarding the airline's understanding pertaining to intellectual property rights within the digEplayer.  Specifically, e.Digital designed these questions to elicit information regarding whether the airlines believed that digEcor was entitled to market the digEplayer and whether digEcor ever made representations to that effect.  e.Digital is entitled to this information for several reasons.

First, it is e.Digital's position that digEcor has incorporated e.Digital's proprietary technology into the digEplayer XT.  *See* Argument §§ I.A & B, *supra.*  Thus, e.Digital is entitled to know whether digEcor ever represented to a customer that it owns all of the intellectual property in the digEplayer XT, or whether it ever admitted to any of its customers that some of the technology contained therein was adapted from the digEplayer 5500, or from e.Digital's confidential information.

Secondly, it has long been e.Digital's position that digEcor no longer possesses a license to market even that technology contained within the digEplayer 5500.  digEcor has not renewed its license to sell such technology, and pays no royalties on its sales of the e.Digital-designed device.  Thus, even as to the digEplayer 5500 customers, e.Digital is entitled to investigate the claims digEcor has made regarding its entitlement to market e.Digital's technology.  If digEcor

ever claimed to have developed the technology itself, or to possess a license to market it, such facts would directly support e.Digital's claims of Intentional Interference, Defamation, Breach of Contract, and a variety of its defenses.

Notwithstanding this firm basis for the intellectual property requests in the customer subpoenas, e.Digital has offered to tailor its four requests to one limited question. In a letter to David Tufts dated April 2, 2008, e.Digital's counsel, Sam Straight, offered a single substitute request, which would have sought "all document concerning authorization to use and/or provide for use or service the digEplayer, or any other device containing e.Digital's proprietary software, firmware, or other intellectual property, including communications from digEcor regarding permission or authorization for such use." *See* April 2, 2008 Sam Straight Letter, attached to Tufts Declaration as Exhibit E. Counsel for digEcor rejected this offer and filed the instant motion instead.

Regardless, the broad scope of discovery, as explained in the authorities cited above, as well as the many facts and claims at issue in this case, entitle e.Digital to the information sought in its subpoenas to digEcor's customers. The Court should deny digEcor's Motion to Quash regarding the subpoenas issued to the airlines.[5]

## CONCLUSION

For the foregoing reasons, e.Digital's subpoenas seek discoverable information, and digEcor's Motion to Quash or Modify such subpoenas should be denied.

---

[5] digEcor's argument that these subpoenas are not limited in time is simply incorrect. The subpoenas issued to the airlines contain the following definition: "Time period limitation:  All requests below seek documents exchanged, transmitted, sent, generated, or modified between 2002 and the present. Any responsive documents not within that timeframe need not be produced." *See* Subpoenas, definitions, ¶ 17, attached to digEcor's Memorandum in Support of Motion to Quash.

DATED this 9th day of May, 2008.

        RAY QUINNEY & NEBEKER, P.C.

        <u>/s/ Ryan B. Bell</u>
        James S. Jardine
        Samuel C. Straight
        Ryan B. Bell
        *Attorneys for Defendants e.Digital Corporation,*
        *Fred Falk, and William Blakeley*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2008, I electronically filed the foregoing MEMORANDUM IN OPPOSITION TO DIGECOR'S MOTION TO QUASH OR MODIFY SUBPOENAS with the Clerk of Court using the CM/ECF System which sent notification of such filing to the following:

> David W. Tufts
> DURHAM JONES & PINEGAR
> 111 E. Broadway, Suite 900
> Salt Lake City, Utah 84111

/s/ Lisa Bonnell

979808