IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DIGECOR, INC., a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>E.DIGITAL CORPORATION, a Delaware corporation; et al. WILLIAM BLAKELEY; FRED FALK; and DOES 1 to 20, individuals,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION TO QUASH OR MODIFY SUBPOENAS AND GRANTING MOTION TO FILE SUR-REPLY**<br><br>Case No: 2:06 cv 437 TS<br><br>Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Plaintiff, digEcor, Inc. ("digEcor"), moved[1] to quash or modify subpoenas issued by e.Digital Corporation ("e.Digital") to digEcor's Suppliers[2] and digEcor Customers.[3]

**Positions of the Parties in the Market**

In April 2002, Plaintiff digEcor entered into a contract with Defendant e.Digital under which e.Digital would develop digital video players according to digEcor's concepts, which digEcor would sell to airline companies.[4] e.Digital was responsible to design, build and manufacture the device that became known as the digEplayer.[5] Various agreements were signed which affected the parties' rights to use certain intellectual property.

---

[1] Motion to Quash or Modify Subpoenas, docket no. 164, filed April 11, 2008.
[2] DeCuir, Inc., Triad Engineering, Inc., VPI Engineering, and Wolf Electronix Corporation. These subpoenas are attached as Exhibits 1 - 4 to Memorandum in Support of Motion to Quash or Modify Subpoenas (Supporting Memorandum), docket no. 169, filed April 11, 2008.
[3] Aeroflot Russian Airlines, Hawaiian Airline, Inc., Jetstar Airlines, Inc., L'Avion International, Inc., MaxJet Airways. Inc., Midwest Airlines, Inc., and Pakistan International Airlines, Inc. These subpoenas are attached as Exhibits 5 - 11 to Supporting Memorandum.
[4] Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at iv, docket no. 70, filed April 25, 2007.
[5] *Id.* at vi.

In late 2004 and 2005, digEcor began developing a new player, which became known as the digEplayer XT.[6] In 2006, e.Digital began selling a new digital player on its own account, the eVU.[7] After e.Digital's eVU and digEcor's XT entered the market, the two companies were in competition with one another.

The dispute thus involves three different digEplayer models—Defendant e.Digital's original digEplayer and new eVU—and Plaintiff digEcor's XT – and rights of the respective parties to concepts and intellectual property.

**Nature of the Claims**

Plaintiff digEcor alleges e.Digital's marketing of the eVU breached agreements between the parties.[8] Plaintiff digEcor also alleges e.Digital breached obligations by delayed delivery of 1,250 digEplayers.[9]

Defendant e.Digital alleges in its counterclaim that digEcor's XT digital player is improperly based on e.Digital's design of the digEplayer.

Thus, digEcor, which claims to have originated the concept and e.Digital, which made the first implementation for sale by digEcor, now argue about their rights in their respective products.

**Discovery Dispute**

Plaintiff digEcor objects to requests contained in two different sets of subpoenas— subpoenas to digEcor Customers and subpoenas to digEcor Suppliers and filed the Motion to

---

[6] Second Amended Counterclaim ¶ 17 at 5-6, docket no. 78, filed April 27, 2007.
[7] *Id.*
[8] Amended Complaint ¶ 40 at 10, docket no. 84, filed May 2, 2007.
[9] *Id.* ¶ 47 at 11.

Quash or Modify Subpoenas. Defendant e.Digital contends that the requests relate to its breach of contract, injunction and Utah Trade Secrets Act counterclaims.[10]

**Subpoenas to digEcor Suppliers: (Requests 1, 2, 4, 5, 8, 11-15, 22, 24, 25)**

Plaintiff digEcor has objected that the subpoenas to digEcor Suppliers should be quashed due to their overbreadth, the burden they impose, and the confidential nature of the documents they seek. Plaintiff digEcor contends that e.Digital is "going fishing" with the subpoenas and that some of the requests are too broad.[11] Plaintiff digEcor argues that e.Digital has only made bare assertions that digEcor has incorporated some aspect of e.Digital intellectual property into the design of the digEplayer XT and has no real factual foundation to justify its claims or the discovery.[12]

Defendant e.Digital contends that digEcor and two of the digEcor Suppliers (DeCuir, Inc. and Wolf Electronix) possessed e.Digital confidential information from the original digEplayer design and that digEcor worked closely with its suppliers to develop the XT, so e.Digital proprietary information could have been employed in developing and building the XT.[13] Defendant e.Digital further contends that digEcor and digEcor suppliers have made several statements which imply that the XT is based on the 5500.[14] Defendant e.Digital argues that the design of the XT, which is substantially similar to the design of the original digEplayer, coupled with the statements made by digEcor and digEcor suppliers are enough foundation to justify inquiry further into whether e.Digital proprietary information was used in the design of the XT.[15]

---

[10] Memorandum in Opposition to digEcor's Motion to Quash or Modify Subpoenas (Opposition Memorandum) at 2, docket no. 180, filed May 9, 2008.
[11] Supporting Memorandum at 2-3.
[12] *Id.* at 5.
[13] *See* Second Amended Counterclaim ¶¶ 18-25 at 6-9.
[14] Opposition Memorandum at 3-4.
[15] *Id.* at 4-5.

**Discussion**

The scope of relevant discovery is broad enough to permit discovery of information relating to e.Digital's counterclaims. A party need not have all its evidence in order to engage in discovery. All that is needed before a party may engage in discovery is a showing of some basis for the claim, which is present here. e.Digital had supplied digEcor and its design and manufacture partners with e.Digital proprietary information including: a complete "Technical Data Package" shared with DeCuir; a "Manufacturing Package" which included detailed schematics, bills of materials, and assembly documents, sent to Wolf Electronix: and numerous documents and sets of data sent directly to digEcor.[16] Additionally, digEcor worked closely with its suppliers to develop the digEplayer XT,[17] so there is a possibility that the digEcor suppliers could have used e.Digital proprietary information.

digEcor provides declarations[18] and deposition testimony to convince the court that no inquiry is needed. It is simply not possible for the court to decide the non-existence of an issue to defeat discovery at this stage, when there is some factual support for the discovery. If digEcor were to have resolved some of the factual points it raises by summary judgment, these inquiries might be limited, but a discovery motion is not a proper forum to eliminate claims.

Even though the information which e.Digital seeks is confidential information, a protective order can sufficiently protect that information from being used improperly by e.Digital.

---

[16] *Id.* at 3.
[17] *Id.*
[18] Declaration of Steve Hurst, docket no. 166; Declaration of Wallace Harkness, docket no. 167, both filed April 11, 2008; Depositions of Fred Rampey of Triad Systems Engineering (the designer of the digEplayer XT) and Tracy DeCuir of DeCuir, Inc. (who consulted on the specifications for the XT) cited at length in the proposed Sur-Reply Memorandum attached as Exhibit A to the Memorandum in Support of Motion for Leave to File Sur-Reply Memorandum re: Motion to Quash or Modify Subpoenas, docket no. 193, filed July 7, 2008. *See* Memorandum in Support of Motion for Leave to File Sur-Reply Memorandum re: Motion to Quash or Modify Subpoenas at 2.

The requests that target the engineering design information to which digEcor objects are the following:

11. All documents that constitute, refer or relate to *Software* associated with, utilized by or designed by any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept, including but not limited to, source code, object code and executable code.

12. All documents that constitute, refer or relate to *Firmware* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept, including but not limited to, source code, object code and executable code.

13. All documents that constitute, refer or relate to *Hardware Designs* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept.

14. All documents that constitute, refer or relate to *User Interface Designs* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept.

15. All documents that constitute, refer or relate to *Industrial Designs* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept.

22. All documents, including but not limited to e-mail, letters, and all other forms of communication, between You and Wencor, digEcor, or APS, (or their officers, directors, agents, or employees) that discuss, concern, refer or relate to the intellectual property rights held by any party in the digEplayer, digEplayer 5500, or digEplayer XT.

24. All documents related to the digEplayer, digEplayer 5500, or digEplayer XT.

25. All documents related to any content for the digEplayer, digEplayer 5500, or digEplayer XT.[19]

---

[19] Supporting Memorandum at 10.

These requests (and requests 1, 2, 4, 5, and 8) are very broad. Omnibus phrases like "regarding" or "pertaining to" can make discovery requests overbroad, and even though these blanket requests may lead to discoverable evidence, they are by their terms burdensome and broad.

Requests 11-15 will be modified to replace the language "All documents that constitute, refer or relate to . . . " with "All documents which evidence . . . ." Requests 1, 2, 4, 5, 8, 24 and 25 are not focused on the issues between these parties, and impose a significant burden on the digEcor Suppliers. They will be omitted from the subpoenas to the digEcor Suppliers. But Requests 11-15 are focused on the issues in the case and can be honed to focus on evidence that will allow e.Digital to gather evidence legitimately helpful to understanding the issues. e.Digital is entitled to compare these materials to determine whether there has been, according to its theory, improper use of its intellectual property. They will be modified as follows:

> 11. All documents that evidence *Software* associated with, utilized by or designed by any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept, including but not limited to, source code, object code and executable code.
>
> 12. All documents that evidence *Firmware* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept, including but not limited to, source code, object code and executable code.
>
> 13. All documents that evidence *Hardware Designs* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept.
>
> 14. All documents that evidence *User Interface Designs* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept.

   15. All documents that evidence *Industrial Designs* associated with, utilized by or designed for any APS, Wencor, or digEcor audio/video playback device (including but not limited to, the digEplayer, digEplayer 5500 or digEplayer XT) including hard copies and electronic copies of same as they are ordinarily kept.

   22. All communications between You and Wencor, digEcor, or APS, (or their officers, directors, agents, or employees) including but not limited to e-mail, letters, and all other forms of communication, that discuss, concern, refer or relate to the intellectual property rights held by any party in the digEplayer, digEplayer 5500, or digEplayer XT.

**Subpoenas to digEcor Customers**

Defendant e.Digital issued subpoenas[20] to airlines who are digEcor customers. Plaintiff first objects because five of the seven customers have never purchased the newer model digEcor player.[21] But it is "e.Digital's position that digEcor no longer possesses a license to market even that technology contained within the digEplayer . . . ."[22] Again, digEcor argues the legal issue in a footnote, dependent on facts and not capable of resolution on a discovery motion.[23]

Plaintiff digEcor also argues that the subpoenas to the digEcor Customers should be quashed because "they improperly suggest to the customers that digEcor has no authorization to sell the digEplayer 5500 or the digEplayer XT, and because they are vague and overbroad."[24]

The requests in the airline subpoenas to which digEcor objects are as follows:

   11. All documents that constitute, refer, or relate to any authorization, permission, legal entitlement or other basis or justification that would entitle You to use and/or provide for use or service digEplayers, digEplayer 5500's or digEplayer XT's, or any other device containing e.Digital's proprietary software, firmware, or other intellectual property.

   12. All documents evidencing any transaction, agreement, or relationship between You and any other party in which another party agreed to license, transfer, or

---

[20] Supporting Memorandum at ii.
[21] *Id.* at 9.
[22] Opposition Memorandum at 7.
[23] Reply Memorandum in Support of Motion to Quash or Modify Subpoenas (Reply Memorandum) at 9, docket no. 185, filed June 3, 2008.
[24] Supporting Memorandum at 7.

otherwise convey rights in e.Digital's intellectual property in relation to the digEplayer 5500 or digEplayer XT.

13. All documents evidencing any attempt made by You to investigate or inquire into title, ownership, licenses, and/or other legal rights held by any party in the intellectual property contained in the digEplayer, digEplayer 5500 or digEplayer XT.

14. All documents, including but not limited to e-mail, letters, and all other forms of communication, between You and Wencor, digEcor, or APS (or their officers, directors, agents, or employees) that discuss, concern, refer or relate to the intellectual property rights held by any party in the digEplayer, digEplayer 5500 or digEplayer XT.[25]

These requests, directed to strangers to the litigation, could cause digEcor customers to infer that digEcor has no authorization to sell the digEplayer 5500 or digEplayer XT and that digEplayer technology is present in other players sold by digEcor. This implication could be harmful to digEcor's relationship with its customers.[26] In *Murata Manufacturing Co. v. Bel Fuse Inc.*,[27] a party's motion to compel production of customer names was denied, simply because it would enable direct contact with those customers.[28] The court reasoned that there was a significant risk that customer relationships would be disrupted, and that there was no justifiable reason to take that risk.[29] Discovery requests directed to an opponent's customers are to be approached with caution, even more than is advised in most discovery directed to third-parties.

Also, the requests are overbroad, particularly as to a third party with whom digEcor has economic relationships. The above requests will be modified to replace the language "All documents that constitute, refer or relate to . . . " with "All documents which evidence . . . ."

---

[25] *Id.* at 7-8.
[26] Supporting Memorandum at 8.
[27] *Manufacturing Co. v. Bel Fuse Inc.*, 2004 WL 1194740, at *7 (N.D. Ill. 2004).
[28] *Id.* at 3.
[29] *Id.* at 7. *See also Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (granting a motion for protective order against discovery, reasoning that where the parties are "fierce competitors" that one party may not issue discovery requests to the other party's customers where doing so may harm that party's relations with its customers and where the party issuing the subpoenas could get the same information from the other party) ; *Volkswagenwerk Aktiengesellsschaft v. Westburg*, 260 F. Supp. 636, 637 (E.D. Pa. 1966) (granting a motion for protective order where defendant was allegedly communicating with plaintiff's clients in a manner "calculated to destroy or seriously impair defendant's business, and its good will among its customers").

Similarly, in Request 14, the language "discuss, concern, refer or relate to" is excessive when directed to digEcor Customers.

These requests will be modified as follows:

11. All documents provided by digEcor that evidence authorization, permission, legal entitlement or other basis or justification for You to use and/or provide for use or service digEplayers, digEplayer 5500's or digEplayer XT's.

12. All documents evidencing any transaction, agreement, or relationship between You and any other party in which any other party agreed to license, transfer, or otherwise convey intellectual property rights in relation to the digEplayer 5500 or digEplayer XT.

13. All documents evidencing any attempt made by You to investigate or inquire into title, ownership, licenses, and/or other legal rights held by any party in the intellectual property contained in the digEplayer, digEplayer 5500 or digEplayer XT.

14. All documents, evidencing communication between You and Wencor, digEcor, or APS (or their officers, directors, agents, or employees)including but not limited to e-mail, letters, and all other forms of communication, that discuss the intellectual property rights held by any party in the digEplayer, digEplayer 5500 or digEplayer XT.

**Time Limit on Subpoenas**

The time frame stated in the subpoena requests was from 2002 to the present. Plaintiff digEcor argues that the time frame should be limited to the period after 2007 because that is when its newer player, the XT entered the market[30]. However, the time frame should not be so limited because important events could have occurred during the development (as to suppliers) or marketing (as to customers) of the devices. Defendant e.Digital did not present any reason the time frame should begin in 2002, so the Court will adopt the time frame from 2005 to the present because 2005 that time period appears to embrace development of both the XT and the eVU.

---

[30] Supporting Memorandum at 10; Reply Memorandum at 10.

9

**ORDER**

IT IS HEREBY ORDERED that the motion to quash or modify the digEcor Supplier subpoenas and the digEcor Customer subpoenas[31] is GRANTED IN PART AS PROVIDED HEREIN.

IT IS FURTHER ORDERED that the subpoenas addressed in this motion shall be modified in accordance with this Order and that e.Digital shall provide revised subpoenas to the recipients of the subpoenas, filing the proof with the court within ten days.

IT IS FURTHER ORDERED that the motion to file sur-reply[32] is GRANTED.

Dated this 16th day of September, 2008.

BY THE COURT

_____
Magistrate Judge David Nuffer

---

[31] Motion to Quash or Modify Subpoenas, docket no. 164, filed April 11, 2008.
[32] Motion for Leave to File Sur-Reply Memorandum re: Motion to Quash or Modify Subpoenas, docket no. 192, filed July 7, 2008.