IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DIGECOR, INC., a Washington corporation,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>E.DIGITAL CORPORATION, a Delaware corporation; et al.,<br><br>Defendants. | ORDER and MEMORANDUM DECISION<br><br><br><br><br><br>Case No. 2:06-CV-437 CW |

This order follows the court's order of March 13, 2009 addressing the parties' motions for summary judgment or partial summary judgment on various claims and counterclaims.  In this order, the court will address the remaining claims put at issue in those motions on which it deferred ruling.  Namely, the court will address: (1) digEcor's motion for summary judgment in its favor on liability on its claim for breach of the duty of good faith and fair dealing; (2) e.Digital's motion for summary judgment in its favor on digEcor's claims of unfair competition under state and federal law and (3) digEcor's motion for summary judgment in its favor on e.Digital's counterclaims for defamation and tortious interference.  The court will also resolve two evidentiary motions brought by digEcor relating to e.Digital's submissions in support of its briefing on summary judgment.  Because previous opinions have extensively discussed the

relationship of the parties and many of the relevant facts, the court will limit its discussion of the material facts relevant to these remaining claims to the analysis section.[1]

## ANALYSIS

**I.       digEcor's Claim for Breach of the Duty of Good Faith and Fair Dealing Fails.**

digEcor alleges that e.Digital violated the duty of good faith and fair dealing implicit in the PO by marketing the eVu while digEcor's order for digEplayer 5500s was delayed. According to digEcor, e.Digital's marketing efforts interfered with digEcor's justified expectations to profit from selling the digEplayer 5500s it had ordered from e.Digital.  e.Digital responds that accepting digEcor's argument would write a covenant not to compete into the PO, a result not permitted under Utah law.

"Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." Eggett v. Wasatch Energy Corp., 94 P.3d 193, 197 (Utah 2004) (citation omitted). "The purpose, intentions, and expectations of the parties should be determined by considering the contract language *and* the course of dealings between and conduct of the parties." St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 200 (Utah 1991).  Despite this seemingly broad mandate to seek out implied agreements, the Utah courts have made it clear that:

> Such a covenant cannot be construed, however, to establish new, independent rights or duties not agreed upon by the parties.  Nor can a covenant of good faith be used to nullify

---

[1]e.Digital has reminded the court that it seeks a judgment that the DRM Agreement's limitation of damages clause applies to digEcor's claim for breach of that agreement.  Because this issue has not been fully briefed, the court has allowed a short period for supplemental briefing on this subject.  The court will work to resolve this motion expediently and will assess whether a hearing is needed when the briefs have been submitted.

a right granted by a contract to one of the parties or to require a party vested with a contract right to exercise that right in a manner contrary to that party's legitimate self-interest.

Brehany v. Nordstrom, Inc., 812 P.2d 49, 55 (Utah 1991) (citation omitted).

digEcor points to no general rule that it is a violation of Utah's contractual duty of good faith and fair dealing for suppliers to compete with their buyers while delivery of goods is pending. Indeed, Utah law favors competition and instructs that even where the parties have agreed upon a covenant not to compete, those covenants are to be narrowly construed. See, e.g., Robbins v. Finlay, 645 P.2d 623, 627 (Utah 1982) ("Covenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable."). Moreover, there is no language in the PO itself that could reasonably be read to imply that e.Digital agreed to refrain from marketing its own competing product while it had not yet delivered the digEplayer 5500s. digEcor appears to argue, however, that the court should look to the facts surrounding the parties' relationship and course of dealing to find an implicit requirement that e.Digital not compete with digEcor while delaying shipment of the digEplayer 5500s.

The facts would support an inference that e.Digital knew or should have reasonably expected that digEcor hoped to profit from selling digEplayer 5500s to airlines. e.Digital's interests were also aligned with digEcor in having digEcor be successful in marketing the digEplayer 5500 as long as e.Digital reasonably expected that digEcor would continue to use e.Digital as the OEM supplier for that product and as long as digEcor was marketing that product. But these generic goals do not adequately establish a common contractual purpose to impose what would in effect be a covenant by e.Digital not to compete by marketing its own

3

products.  If such generic common objectives could be found to imply such a covenant, every contract between a supplier and a purchaser would give rise to a duty not to compete pending delivery, or at all for that matter.  Moreover, the express objective of the PO was for e.Digital to deliver the digEplayer 5500s to digEcor at the price and consistent with the other express terms of the PO.  digEcor had a reasonable expectation that the PO would be performed and it would accept delivery of the digEplayer 5500s.  That was the performance it could reasonably anticipate and it had no basis to infer an obligation by e.Digital to more than fulfil its contractual obligation. The covenant of good faith might apply had e.Digital acted to prevent digEcor from fulfilling its requirements under the PO, such as providing the color or other specifications necessary to fill the order.  But digEcor makes no such allegations or showing.

Nor does the course of dealing between these parties support a finding that there was an implied covenant not to compete here.  Over the course of their relationship, the obligations undertaken by e.Digital to digEcor were, generally speaking, to design and deliver digEplayer 5500s.  digEcor points to no facts that e.Digital ever took any action from which it could be inferred that e.Digital agreed to help digEcor make a profit from those products.  In fact, digEcor itself points out that the parties understood digEcor to be the marketer and e.Digital to be the behind-the-scenes technology company.  Once e.Digital delivered the product, it was digEcor's responsibility to sell them under whatever terms it deemed advisable, or not sell them at all.  The parties were not partners in either a legal or practical sense and it is undisputed that, although they initially contemplated a revenue sharing agreement,  they never attempted to negotiate the

terms of such an agreement.  Rather, e.Digital received a flat fee for the digEplayer 5500s it delivered.[2]

In light of the PO and the facts surrounding the parties' relationship and course of dealing, the court rules that as a matter of law e.Digital had no implied duty to refrain from competing with digEcor while the digEplayer 5500 were not yet delivered.  To impose such a duty would "establish new, independent rights or duties not agreed upon by the parties." Brehany, 812 P.2d at 55.  While e.Digital "may not have followed the golden rule" by marketing the eVu to airlines before it delivered the digEplayer 5500s to digEcor, e.Digital did not breach the implied covenant of good faith and fair dealing in doing so.  Oakwood Village LLC v. Albertsons, Inc., 104 P.3d 1226, 1240 (Utah 2004).  Accordingly, digEcor's motion for summary judgment on its claim of breach of the duty of good faith and fair dealing is DENIED.  Because digEcor's claim cannot prevail as a matter of law, the court will entertain a motion by e.Digital for summary judgement in its favor on the claim for breach of the duty of good faith and fair dealing under the Third Claim of digEcor's operative complaint.

**II.    digEcor's Claim for Unfair Competition Claims under Utah Statutory Law Fails, but its Remaining Unfair Competition Claims Survive.**

e.Digital has moved for summary judgment in its favor on each of digEcor's unfair competition claims in the Tenth, Eleventh, and Twelfth Claims of the complaint.  As explained

---

[2]It is also worth noting that by the time the parties entered the PO, it was clear that e.Digital was not going to be the OEM for digEcor's next generation viewer.  It seems likely, therefore, that the PO was to be the parties' last purchase transaction.  If that was the case, it made no difference as a practical matter to e.Digital whether digEcor sold the digEplayer 5500s or not.

below, only one claim, digEcor's Utah statutory claim, is appropriate for judgment at this time.

The motion is denied on the remaining claims.

### A.     Lanham Act

For digEcor to succeed on its claim under the Lanham Act, it must demonstrate the

following elements by a preponderance of the evidence:

> (1) that the defendant made material false or misleading representations of fact in
> connection with the commercial advertising or promotion of its product; (2) in commerce;
> (3) that are either likely to cause confusion or mistake as to (a) the origin, association or
> approval of the product with or by another, or (b) the characteristics of the goods or
> services; and (4) injure the plaintiff.

Sally Beauty Co., Inc. v. Beautyco, Inc., 304 F.3d 964, 980 (10th Cir. 2002) (citation omitted).

digEcor has proffered sufficient evidence from which a reasonable fact finder could

conclude that e.Digital's marketing efforts were false or misleading.  That conclusion, however,

is not legally compelled by the facts as the record stands.  As the cases cited by the parties show,

the context of statements at issue may be highly relevant in assessing whether they are

misleading.  Terms such as "new and improved" may be mere puffing in some circumstances,

but misleading in others.  The highly factual nature of this inquiry makes summary judgment

improper here.  As for whether the statements at issue that e.Digital made in its marketing efforts

were literally false, there are disputes of fact that also prevent the court from deciding this

question.  For example, there is a question as to exactly what "OEM" means in the IFE context.

As the record stands, the court is not prepared to decide either of the issues of whether the

statements were false or misleading as a matter of law.  It may well be that at the conclusion of

digEcor's presentation of its case in chief, there may not be sufficient evidence on this claim to

survive a motion for a directed verdict.  But on the record presented in support and opposition to

the motion for summary judgment, the court cannot conclude as a matter of law that this claim

fails: a reasonable fact finder could conclude that  e.Digital's statements were either misleading

or literally false, or could find them to be true and not misleading.

Turning to the question of confusion, there is also sufficient evidence in the record to

create an issue of fact.  That is, a reasonable fact finder could find that there was actual confusion

by airline customers between digEcor and its digEplayer products on one hand and e.Digital and

its eVu on the other.  The evidence supports, for example, that some airlines mistook e.Digital

for digEcor and the eVu for the digEplayer 5500.  But there is no evidence establishing beyond

dispute that any such confusion was <u>caused</u> by e.Digital's marketing efforts as opposed to other

factors.  e.Digital argues that at most the evidence would allow an inference that that the airlines

were initially confused, but given the sophistication of the parties and the dollar amounts

involved in the transactions, there would be no confusion as to whom the airlines were dealing

with when the sale was concluded.  But even if there were only initial interest confusion, that

appears to be enough support a claim, at least at this stage of the proceeding.  <u>See</u> <u>Australian</u>

<u>Gold, Inc. v. Hatfield</u>, 436 F.3d 1228, 1238-40 (10th Cir. 2006) (discussing initial interest

confusion in the trademark violation context).

Accordingly, even assuming that airlines would probably ascertain the difference between

digEcor and e.Digital before making their final purchases, digEcor may be able to prove

materiality of statements by showing initial interest confusion.  But as mentioned, digEcor has

not shown that any initial interest confusion, or any lasting confusion for that matter, necessarily

resulted from anything e.Digital did, which will be required for it to succeed on this claim.

Finally, the question of whether digEcor was injured cannot be resolved on this motion. As recognized by e.Digital, digEcor need not show actual damages if e.Digital's statements were literally false. As mentioned, however, the question of literal falsity is not ready for judgment at this time. Meanwhile, if the statements were not literally false but nonetheless misleading, digEcor would have to show actual damages. digEcor has not made an undisputed showing that it was damaged by any potentially false statements., but there is sufficient evidence on the record to create an issue of fact on that question.

In sum, because disputes of material fact exist on all aspects of digEcor's Lanham Act claim, the court must DENY e.Digital's motion for summary judgment on this issue.

### B.      Utah Common Law Unfair Competition

"Pursuant to Utah common law, unfair competition includes-but is not limited to-passing off, palming off, imitating, and causing or likely causing confusion or deception." Overstock.com, Inc. v. SmartBargains, Inc., 192 P.3d 858, 863 (Utah 2008) (citations omitted). For the same reasons that the court believes digEcor's Lanham Act claim is inappropriate for summary judgment, the court holds that digEcor's common law claim for unfair competition is equally unsuited. Accordingly, e.Digital's motion for summary judgment is DENIED on this claim.

### C.      Utah Statutory Unfair Competition

To prove a cause of action under Utah Code Ann. § 13-5a-103, digEcor must show, among other things, that e.Digital's actions were unfair and violated a software license. digEcor argues that it has shown a violation of a software license, arguing that e.Digital violated the

DRM Agreement.  The court does not view such a violation, even if proven, as providing a basis for this claim.

Specifically, the court does not read § 13-5a-103 as allowing a plaintiff to shoehorn any violation of any software agreement to support an unfair competition cause of action.  In the definition section of the Utah statute, "unfair competition" is defined in relevant part as "an intentional business act or practice that. . . is unlawful, unfair, or fraudulent; and . . . is . . . a software license violation."  Utah Code Ann. § 13-5a-102(4)(a) (emphasis added).  The conjunctive "and" in that definition is most logically read to require that the conduct underlying the unlawful, unfair, or fraudulent conduct be the same conduct that violates the software license.

Here, digEcor alleges that e.Digital granted digEcor an exclusive license in DRM software.  According to digEcor, e.Digital violated that license by using the DRM software in the eVu.  Even assuming for purpose of this motion that digEcor were to prevail on this claim, the alleged conduct of wrongly using certain software is at best tangentially related to the allegedly unlawful marketing activities giving rise to the unfair competition claims.  Such conduct may be a breach of the DRM Agreement, but it does not meet the requirement of being otherwise unlawful, unfair or fraudulent.  Consequently, digEcor's cause of action under § 13-5a-103 fails as a matter of law, and e.Digital's motion for summary judgment on this claim is GRANTED.[3]

III.    **e.Digital's Defamation Claim Survives.**

digEcor has moved for summary judgment dismissing e.Digital's claim for defamation in the Seventh Claim of e.Digital's operative counterclaim.  e.Digital responds that several

_____

[3]digEcor did not claim a violation of California statutory law in its latest complaint, so the court has disregarded digEcor's argument on this point.

statements made by Brent Wood of digEcor support a claim for defamation *per se*.  Specifically,

e.Digital has presented sufficient evidence to create an issue of fact of whether Mr. Wood

purposely told various airlines that this court had found the covenant not to compete to be valid

and in force, contrary to the court's actual finding, and that e.Digital was acting in breach of a

contract.

One example of such evidence is an email dated February 25, 2007, to Alitalia airlines, in

which Mr. Wood addressed the possibility that Alitalia would purchase the eVu from e.Digital

rather than digEcor's viewer.  After describing the ongoing dispute with e.Digital, Mr. Wood

wrote:

> The main ruling that should be carefully examined by any customer wishing to purchase
> either hardware of software from e.digital was that the non disclosure [contract] (which
> provided that e.digital could not compete with DigEcor with any similar product to the
> digEplayer) is STILL VALID.  Therefore e.digital is contractually bound to not compete
> with DigEcor until well into 2009 if NOT seven years beyond 2009.

(Ex. 13 to e.Digital's Supp. Memo. in Opp'n.) (capitalization in the original).

Another example is an email of March 29, 2007 that Mr. Wood to sent to Amir Hirani

and "inadvertently" copied to various Alitalia executives.  (Ex. 8 to e.Digital's Supp. Memo. in

Opp'n.)  Mr. Wood represented that the court had entered a prior ruling, which digEcor would be

seeking to enforce, that the "2002 agreement between digEcor and e.digital is legal and still

binding on e.digital."  (Id.)  It is clear from the email that Mr. Wood intends to communicate that

by competing, e.Digital was in violation of a covenant not to compete.  Mr. Wood continues that

a court order would bar e.Digital from "selling their eVu product . . . for at least two more years

and should make them honor the contract with digEcor."  (Id.)  When Mr. Hirani questioned

whether Mr. Wood could recall the inadvertent email to the airlines, Mr. Wood responded, "I did it on purpose."  (Id.)

These emails, together with the other evidence on the same subject, are sufficient to create an issue of fact as to whether digEcor made statements to e.Digital's customers and potential customers charging e.Digital with "conduct that is incompatible with the exercise of a legal business."  Baum v. Gillman, 667 P.2d 41, 43 (Utah 1983).  And of course, allegations of such conduct make up one category of defamation *per se*.  See id.

Further, contrary to digEcor's assertion otherwise, the court does not view Utah law as requiring e.Digital to show actual damages if it proves defamation *per se*.  Rather, damages may be presumed in such a case.  See id. at 42 ("Slander *per se* does not require a showing of special damages because damage and malice are implied.") (citation omitted).  In any event, even if digEcor is correct that e.Digital must prove damages in a defamation *per se* case, e.Digital has presented evidence to create an issue of fact as to whether it lost or failed to obtain business from airlines contacted by digEcor.  While e.Digital cannot undisputedly show that the loss of or failure to secure business was attributable to digEcor's words, digEcor has equally not undisputedly shown that their words did not cause the losses.

In sum, summary judgment in digEcor's favor on e.Digital's defamation claim is not appropriate due to questions of disputed material fact.  digEcor's motion is accordingly DENIED.

## IV.    e.Digital's Tortious Interference Claim Survives.

digEcor moves for judgment dismissing e.Digital's claim for tortious interference.  To prove such a claim, e.Digital must show (1) that digEcor intentionally interfered with its existing

or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to e.Digital.  See Leigh Furniture and Carpet Co. v. Isom, 657 P.2d 293, 304 (Utah 1982). Here, e.Digital has offered sufficient evidence to support each element.  For example, Mr. Wood's emails of February 25 and March 29, 2007, which were directed at a known e.Digital customer and could constitute defamation *per se* (an improper means), would meet the first two elements.  And as mentioned above, e.Digital has presented evidence to create an issue of fact of whether it has been damaged by digEcor's allegedly wrongful conduct.  Accordingly, digEcor's motion for a judgment in its favor on e.Digital's tortious interference claim, the Sixth Claim in e.Digital's operative counterclaim is DENIED.

## V.      Related Motions

Finally, the court will rule on two outstanding motions made by digEcor to strike factual submissions made by e.Digital.

### A.      digEcor's Motion to Strike the Declaration of William Blakeley Is Denied

digEcor's motion to strike Mr. Blakeley's declaration in support of e.Digital's motion for partial summary judgment (Dkt. No. 236) is moot.  The key facts that e.Digital sought to establish through Mr. Blakeley's declaration are that airline customers are sophisticated, use a vetting process for vendors, and would be able to tell the difference between digEcor and e.Digital by the time they made their IFE player purchases.  But as mentioned above, initial interest confusion would support an unfair competition act claim.  And the court does not believe that it can be said as a matter of law that even the most sophisticated airline could not be susceptible to such confusion.  This conclusion alone makes Mr. Blakeley's opinions irrelevant at this stage in the proceedings.

Moreover, while it has not done so beyond dispute, digEcor may be able to show actual confusion on the airlines' part resulting from e.Digital's efforts. Such a showing would make Mr. Blakeley's opinions about airline customers' level of sophistication irrelevant in any event.

In sum, the court does not view as material any of the portions of Mr. Blakeley's declaration that digEcor seeks to strike. Accordingly, digEcor's motion to strike is DENIED moot.

**B.     digEcor's Motion to Strike Various Submissions is Denied**

digEcor also moves to strike various submissions made by e.Digital (Dkt. No. 257). As is clear from the discussion of each part of this motion below, this motion is DENIED as moot.

**1.     Blakeley Declaration**

As mentioned, the court does not view as material for purposes of this order Mr. Blakeley's opinions about airline customers' sophistication or purchasing practices. Nor does the court find that, for the purposes of this motion, it is necessary to consider the technical capabilities of the digEplayer 5500. This evidence seems primarily directed to issues that are now moot because the claims to which it it would be directed have been dismissed. Nor were any of the purportedly hearsay statements and related exhibits attached to Mr. Blakeley's declaration dispositive on any issue. Accordingly, this part of the motion is moot.

**2.     Bostenero Declaration**

The court did not rely on any facts from Mr. Bostenero's declaration in this opinion, mooting this part of the motion.

**3.     Ryan Bell Declaration**

Any technical defect that may have existed with Mr. Bell's declaration when digEcor filed its motion has been corrected at this point, mooting this part of the motion.

### 4. Certain Exhibits Attached to e.Digital's Opposition

digEcor argues, in blanket fashion, that 30 exhibits attached to e.Digital's opposition memorandum are hearsay. If the facts in exhibits were, by themselves or in conjunction with facts in other objected-to exhibits, dispositive of any issue in this case, this motion might be relevant at this point. But the court has concluded that it would have reached the same decisions on all of the issues in this order and previous orders without regard to any of these exhibits. Consequently, this part of the motion is moot.

Moreover, if this part of the motion were ripe for decision, the court would strike the objections because digEcor failed to explain, exhibit by exhibit, what particular statement was hearsay and why. The court will not make digEcor's arguments for it.

### 5. Deposition Testimony of Ray Henson

Because the court ruled that digEcor had no duty to negotiate in good faith, this part of the motion is moot.

### ORDER

For the reasons stated above, the court ORDERS as follows:

e.Digital's motion for summary judgment (Dkt. No. 214) is GRANTED in part and DENIED in part, as specified above and in the court's previous order;

digEcor's motion for summary judgment (Dkt. No. 217) is GRANTED in part and DENIED in part, as specified above and in the court previous order and

digEcor's motions to strike (Dkt. Nos. 236 & 257) are DENIED as moot.

SO ORDERED this 2nd day of April, 2009.

BY THE COURT:

Clark Waddoups
United States District Judge